IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BROTHERHOOD OF LOCOMOTIVE )
ENGINEERS AND TRAINMEN, )
GENERAL COMMITTEE OF )
ADJUSTMENT, CENTRAL REGION, )
)
          Plaintiff, )
)
v. )   No. 05 C 7293
)
UNION PACIFIC RAILROAD )   Judge Ronald A. Guzmán
COMPANY, )
)
          Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Brotherhood of Locomotive Engineers and Trainmen ("BLET") seeks to enforce an arbitration order to prevent defendant Union Pacific Railroad Company ("UP") from establishing new railroad runs from Kansas City to Labadie, Missouri. In response, UP has moved to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons provided below, the Court denies UP's motion under Rule 12(b)(1), but grants the motion to dismiss under Rule 12(b)(6).

## BACKGROUND

In 1995, UP sought approval from the Surface Transportation Board ("STB") to acquire Southern Pacific Rail Corp., Southern Pacific Transportation Co., St. Louis Southwestern Railway Co., SPCSL Corp., and the Denver and Rio Grande Railroad Co.

The STB approved and, pursuant to 49 U.S.C. § 11326, conditioned the merger on implementation of the employee-protection conditions known as *New York Dock* conditions. *See New York Dock Ry.-Control-Brooklyn E. Dist. Terminal*, 360 I.C.C. 60, 84-90 (1979), *aff'd sub nom. New York Dock Ry. v. United States*, 609 F.2d 83, 101 (2d Cir. 1979). Under the *New York Dock* conditions, UP and BLET entered into a number of Merger Implementing Agreements that created centralized hubs with rail lines running to pre-merger terminals.[1] The thrust of these labor agreements guaranteed certain UP locomotive engineers lifetime rights to work from their home hub.

On May 16, 2003, UP served BLET with notice indicating its intent to establish new rail service between North Little Rock and Memphis. On August 29, 2003, UP served a second notice informing BLET of plans to establish a number of service runs stemming from the Kansas City and St. Louis hubs. According to UP, a former labor agreement, specifically Article IX of the May 19, 1986 Award of Arbitration Board No. 458 ("1986 National Agreement"), permitted the new services and no provision in the recent Merger Implementing Agreements eradicated these rights. BLET, on the other hand, argued that the proposed services would force the relocation of engineers in violation of the Merger Implementing Agreements. After a hearing, an arbitration committee found that the 1986 National Agreement remained intact, but only to the extent it did not supersede the protections of the Merger Implementing Agreements. The arbitrator further found that the new service runs proposed under the 1986 National

---

[1] At issue in the arbitration order involved in the present case were the North Little Rock/Pine Bluff Hub Merger Implementation Agreement, the Kansas City Hub Merger Implementation Agreement, and the St. Louis Hub Merger Implementation Agreement.

2

Agreement appeared to nullify the provisions contained in the Merger Implementing Agreements.

Notwithstanding the arbitration order, in February 2005, UP sent another notice under the 1986 National Agreement advising BLET of its intention to establish service between Kansas City and Labadie, Missouri. BLET filed the instant suit alleging that the scope of the arbitration award covered this service run. Consequently, BLET seeks to enforce the arbitration award and asks this Court to order UP's compliance.

## DISCUSSION

BLET's Complaint seeks to enforce the *New York Dock* arbitration award via three counts, each of which merely rests on a different theory for subject matter jurisdiction. UP denies that the Court has jurisdiction under any count and moves to dismiss each pursuant to Rule 12(b)(1). Alternatively, UP argues that the complaint fails to state a claim pursuant to Rule 12(b)(6) because the scope of the arbitration order does not cover the February 2005 proposed service.

### I. Whether the Court Lacks Subject Matter Jurisdiction

When moving to dismiss pursuant to Rule 12(b)(1), a defendant may opt for a facial attack, *i.e.*, a challenge of the court's subject matter jurisdiction based on the sufficiency of the complaint's allegations, or a factual attack, *i.e.*, a challenge of the factual basis for the court's subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2002). Where, as in this case, defendant makes a

3

facial attack, the court assumes that the allegations are true and construes them in a light most favorable to the plaintiff. *See id.*

BLET first argues that the arbitration decision constitutes an order of the STB such that 28 U.S.C. § 1336(a) supplies a jurisdictional basis for its enforcement. Section 1336(a) provides:

> Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, in whole or in part, any order of the Surface Transportation Board, and to enjoin or suspend, in whole or in part, any order of the Surface Transportation Board for the payment of money or the collection of fines, penalties, and forfeitures.

BLET construes the clause "for the payment of money" as a qualification of the courts' power to "enjoin or suspend" any order of the STB. Thus, BLET reads the first clause dealing with enforcement of an STB order to apply to "any order" without limitation. Because BLET simply seeks to "enforce" the order, it argues that section 1336(a) controls its claim. UP disagrees and argues that section 1336(a) provides jurisdiction only for orders involving the payment of money regardless of whether the action seeks to enforce, enjoin or suspend.

UP instead points to 28 U.S.C. § 2342(5) as the basis for jurisdiction over the enforcement of STB orders not dealing with the payment of money. Section 2342(5) states:

> The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all rules, regulations, or final orders of the Surface Transportation Board made reviewable by section 2321 of this title.

Thus, UP argues that the Seventh Circuit Court of Appeals would have exclusive jurisdiction over this action. The Court disagrees.

4

Section 1336(a) grants jurisdiction to district courts to enforce any order of the STB. *See Carothers v. W. Transp. Co.*, 554 F.2d 799, 805 (7th Cir. 1977) (finding jurisdiction over private party enforcement action involving a non-monetary order); *Walters v. Roadway Express, Inc.*, 557 F.2d 521, 523 (5th Cir. 1977) (holding section 1336(a) provides jurisdiction over enforcement of order dealing with employee seniority). The courts of appeals are given exclusive jurisdiction over actions "to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Surface Transportation Board." 28 U.S.C. §§ 2321(a), 2342(5); *see also Pullman-Standard v. ICC*, 705 F.2d 875, 878 (7th Cir. 1983).

Here, BLET does not seek to "enjoin or suspend" any order of the STB. Instead, it seeks to enforce an order of the STB. Thus, section § 2342(5) does not govern this case, and section 1336(a) does.

28 U.S.C. § 2321(b) further states: "The procedure in the district courts in actions to enforce, in whole or in part, any order of the Surface Transportation Board other than for the payment of money or the collection of fines, penalties, and forfeitures, shall be as provided in this chapter." The parties agree that the *New York Dock* order at issue does not involve the payment of money. Thus, BLET's enforcement action seems to fall squarely within section 2321(b). Although neither party addresses sections 2321(b) or 2322, the Court's first duty is to ensure that subject matter jurisdiction exists. *See Sadat v. Mertes*, 615 F.2d 1176, 1188 (7th Cir. 1980). Accordingly, the Court must determine whether these provisions apply.

Although non-payment enforcement actions are proper in the district courts, 28 U.S.C. § 2322 provides that "[a]ll actions specified in section 2321 of this title shall be

5

brought by or against the United States." 28 U.S.C. § 2322; *see I.C.C. v. S. Ry. Co.*, 543 F.2d 534, 536 (5th Cir. 1976); *Schwartz v. Bowman*, 244 F. Supp. 51, 67 (S.D.N.Y. 1965), *aff'd sub nom. Annenberg v. Alleghany Corp.*, 360 F.2d 211 (2d Cir. 1966) (per curiam). "The absence of the United States as a party is a jurisdictional defect." *Schwartz*, 244 F. Supp. at 68.

The issue of whether these provisions apply to private party enforcement actions was addressed by the Seventh Circuit Court of Appeals in *Carothers v. Western Transportation Co.*, 563 F.2d at 312. There, the court noted the apparent conflict between the statute providing for a private cause of action to enforce an order of the Interstate Commerce Commission ("ICC"), the predecessor to the STB, and the jurisdictional requirement under section 2322 that the United States bring suit. *Id.* at 313. After review of the legislative history, the Court found that section 2322 did not apply to actions brought by private parties. *Id.*

*Interstate Commerce Commission v. Southern Railway Co.*, 543 F.2d 534, 536-39 (5th Cir. 1976), further elaborates on the legislative intent behind section 2322. Originally, the ICC could bring action in the appropriate court to enforce its own orders. *Id.* at 536. President William Howard Taft noted that this involved a blending of administrative, legislative and judicial functions. *Id.* at 537 (citing H.R. Rep. No. 61-923, at 3 (1910)). In response, Congress enacted measures vesting the Attorney General with centralized responsibility to enforce ICC orders. *Id.* at 536-37.

In light of this precedent and legislative history, the Court finds that section 2322 does not apply in this case. As a private litigant, BLET was not required to join the United States. Accordingly, this Court finds jurisdiction pursuant to 28 U.S.C. § 1336(a).

## B. Whether the Complaint Fails to State a Claim

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint and draws all reasonable inferences in plaintiff's favor. *Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

UP asserts that the arbitration award did not reach the merits of the Kansas City to Labadie, Missouri service run that UP now plans to establish under the 1986 National Agreement. Alternatively, UP claims that even if the arbitrator did consider the Kansas City to Labadie run, the instant proposal qualitatively differs from the proposal presented during the arbitration. Either way, UP contends that this dispute must first be submitted for further arbitration pursuant to the *New York Dock* conditions and does not state a claim for judicial enforcement in this Court.

BLET does not deny that a *New York Dock* arbitrator has initial jurisdiction to decide whether proposed runs contravene the Merger Implementing Agreements. It does, however, opine that the arbitrator considered this exact run, decided the run would violate the Merger Implementing Agreements, and that this Court can enforce such decision without further arbitration.

28 U.S.C. § 1336(a) grants district courts power to enforce STB orders, not to expand or supplement them. *Walters*, 622 F.2d at 165. "The court may not interject itself into the arbitration process by elaborating on or rewriting an arbitrator's award." *United Steelworkers of Am. v. Danly Mach. Corp.*, 852 F.2d 1024, 1027 (7th Cir. 1988).

7

Further, a district court may not interpret an ambiguous arbitration award unless the ambiguity can be resolved from the record. *Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180, 188 (7th Cir. 1985). In the case of ambiguity, the court must send the case back to the arbitrator for further proceedings. *Id.* By way of review, on May 16, 2003, UP notified BLET of its intent to establish new interdivisional service between the North Little Rock/Pine Bluff hub and Memphis. BLET complained that the North Little Rock Merger Implementing Agreement disallowed this run. UP's August 29, 2003 notice sought to establish service between (1) Kansas City and Jefferson City, (2) Marysville, Kansas and Jefferson City, (3) Kansas City and Labadie Missouri, and (4) Kansas City and St. Louis. BLET disputed the right to establish these runs under the Kansas City and St. Louis Merger Implementing Agreements. UP argued that it had retained its rights under the 1986 National Agreement to establish the runs proposed under both notices regardless of the Merger Implementing Agreements.

First, UP asserts that the arbitrator considered only whether the North Little Rock to Memphis run proposed under the 1986 National Agreement would nullify the North Little Rock Merger Implementing Agreement. To support its position, UP points to a footnote included in the *New York Dock* arbitration opinion stating that only the North Little Rock Merger agreement was ripe for arbitration. By resting on this argument, UP sets forth only its own question presented to the arbitrator.

The 1986 National Agreement required UP to first discuss with BLET the notices for proposed runs before an arbitrator could decide UP's 1986 National Agreement rights to establish new runs. Because UP had only discussed the North Little Rock Hub, the arbitrator noted she lacked jurisdiction to decide whether the 1986 National Agreement

8

would allow UP to establish the services affecting the Kansas City and St. Louis Hubs proposed by the second notice.

BLET, however, sought to establish whether the North Little Rock, Kansas City and St. Louis Merger Implementing Agreements could be changed by the 1986 National Agreement. According to BLET, all three agreements contained specific language establishing that the provisions in the merger implementing agreements prevailed in the event of conflict with the 1986 National Agreement.

Notably, the arbitrator framed the issues as follows:

> [O]ur task is to construe the provisions of the hub merger implementing agreements and decide the question of whether the language therein prevents the application of the Article IX [of the 1986 National Agreement] under the circumstances presented. If the answer is in the affirmative, then the Article IX interdivisional service notices must be rescinded.

(*Bhd. of Locomotive Eng'rs v. Union Pac. R.R. Co.*, U.C.C. Fin. Docket No. 32760 (Feb. 12, 2004) (Kenis, Arb.).) The arbitrator then went on to find that all three agreements contained "plain and unambiguous" language providing for supremacy should any conflict arise with an existing labor agreement. (*Id.*) Finally, the arbitrator decided whether the "Hub Merger Implementing *Agreements*" conflicted with "the interdivisional service *runs*" proposed. (*Id.* (emphasis added).) She concluded that the "new ID service *runs*" would nullify numerous provisions in the "implementing *agreements*." (*Id.* (emphasis added).) As such, the merger implementing agreements prevailed. (*Id.*)

The arbitrator's decisions unambiguously addressed the interrelationship between all three merger implementing agreements and the 1986 National Agreement. She clearly found that the noticed service runs stood in conflict with the implementing agreements and that the agreements must prevail. The findings were not limited to the

9

North Little Rock Merger Implementing Agreement but also included the Kansas City Implementing Agreement and the St. Louis Implementing Agreement. UP's first argument fails.

UP further argues, however, that even if the arbitrator found the second notice proposing the Kansas City to Labadie run along with three others to violate the Kansas City and St. Louis Merger Implementing Agreements, she did not find the notice at issue proposing solely the Kansas City to Labadie run was inconsistent with the agreements. This argument requires closer consideration.

The arbitrator found that the proposed service runs under the 1986 National Agreement appeared to nullify the provisions of the implementing agreements controlling train operation, compensation and home terminal locations. While she undoubtedly decided that the second proposal would adversely affect the Kansas City and St. Louis agreements, she did not specify whether each individual proposed run within the notice would have this effect or whether the combined effect of all runs would produce these results. Under that proposal, the Kansas City to Labadie run was just one of four intended interdivisional runs.

In rejecting UP's contention that other successful service runs established after the negotiation of unrelated Merger Implementing Agreements point to the legitimacy of new proposals, the arbitrator stated, "[w]e simply do not know . . . whether the facts giving rise to the interdivisional service changes were similar to those at bar." The same holds true here. Whether the factual circumstances involved in the Kansas City to Labadie run alone would have the same effect as the four intended interdivisional runs combined is unknown.

10

Significantly, the arbitrator framed this notice in terms of the Kansas City to Jefferson City run with the Marysville to Jefferson City, *Kansas City to Labadie*, and Kansas City to St. Louis also included. It may be that only the Kansas City to Jefferson City run ran afoul of the Merger Implementing Agreements with the other runs inseparable. Or perhaps the arbitrator believed all the runs individually conflicted and simply replicated the order in the notice or the record. In any event, this Court finds that whether the Kansas City to Labadie run alone would modify the Kansas City Implementing Agreement was not unambiguously decided by the *New York Dock* arbitrator. As a result, the Court declines to interpret the ambiguous order and holds that this issue is more properly one for arbitration.

## CONCLUSION

For the foregoing reasons, the Court denies UP's motion to dismiss under Rule 12(b)(1) and grants UP's motion to dismiss under Rule 12(b)(6). This case is hereby terminated.

**SO ORDERED**                                **ENTERED:**

JUL 27 2006

HON. RONALD A. GUZMAN
**United States Judge**

11